𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

| | |
|---|---|
| **Dana Ross, #11209-084,** )<br>　　　　　　　　　　　　　　　　　) Civil Action No. 9:07-3261-CMC-GCK<br>　　　　　　　Petitioner, )<br>　　　　　　　　　　　　　　　　　)<br>vs. 　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　) **REPORT AND RECOMMENDATION**<br>**Warden of FCI Edgefield,** 　　　 ) **OF THE MAGISTRATE JUDGE**<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　　Respondent. )<br>_____) | |

## **I. INTRODUCTION**

The petitioner, Dana Ross ("Petitioner" or "Ross"), a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## **II. BACKGROUND**

The Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") Edgefield in Edgefield, South Carolina. The Petitioner was sentenced on November 21, 2005 to a 60-month term of incarceration in the United States District Court for the Western District of Virginia for Conspiracy to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846. He has an anticipated release date of February 21, 2011, via Good Conduct Time ("GCT") release.

The Petitioner has named the Warden at FCI Edgefield, as the respondent (the "Respondent") in his petition (the "Petition"). The Petitioner filed this Petition on October 2, 2007, asserting that he is entitled to an award of at least 553 days, and at the most 626 days of jail credit toward his current federal sentence. Petitioner states at the time his federal sentence was imposed, he was incarcerated based upon an April 26, 2005, federal indictment and

unrelated/related state charges. Ross alleges that the state sentence he received after the federal sentence was imposed to run concurrently with the federal sentence. He claims that because the state sentence was imposed to run concurrent with the federal sentence, he should be awarded jail credit from the date of his arrest on January 29,2005, or at the very least from April 26, 2005, the date of his federal arraignment. Petitioner requests the Court take jurisdiction over this matter and award him the appropriate jail credit, and any other relief the Court deems fitting and just.

On December 4, 2007, the Respondent filed a motion to dismiss or in the alternative for summary judgment with a supporting memorandum. [11] By order filed December 13, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [14] On December 11, 2007, the Petitioner filed a response in opposition to the motion for summary judgment [12].

### III.  DISCUSSION

#### A.  Exhaustion of Administrative Remedies

The Respondent concedes that the Petitioner has exhausted the administrative remedies available under the formal Administrative Remedy procedure established by the Bureau of Prisons prior to filing this action.[1]

#### B.  Facts

On September 15, 2004, Petitioner was arrested by the Bristol, Virginia, Police Department for Sale/Distribute Marijuana and Manufacture, Sale, Possession of a Controlled Substance (hereinafter, "State Arrest #1). Petitioner remained in state custody for one day, until September 16, 2004, at which time he was released on bond. [*See* Petitioner's Petition [1] at

---

[1] *See* Respondent's Brief [11] at p. 4, Part VI. The Federal Bureau of Prisons has established an administrative procedure whereby a federal inmate may seek review of complaints relating to any aspect of his or her confinement. *See* 28 C.F.R. § 542.10.

Appendix 7 *and* Respondent's Brief [11] at Exhibit #3, Affidavit of Forest B. Kelly ("Kelly Affidavit") at ¶4].

On January 4, 2005, a federal grand jury sitting in the jurisdiction of the United States District Court for the Western District of Virginia returned an indictment charging Ross with Conspiracy to Distribute Five Grams or More of Cocaine Base. This indictment was related to the State Arrest #1 by Commonwealth of Virginia authorities. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelley Affidavit at ¶5].

On January 29, 2005, while out on state bond, Ross was arrested by the Bristol Police Department for two counts of Sale/Distribute Marijuana (hereinafter, "State Arrest #2). Ross remained in state custody until February 14, 2005, at which time he was again released on a state bond. [*Id*., ¶6]. On February 28, 2005, while out on state bond, Ross was arrested by the Bristol Police Department for Possession of Cocaine with Intent to Distribute and Distribution of Cocaine (hereinafter, "State Arrest #3). Ross remained in primary state custody following this arrest. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelly Affidavit at ¶7].

On April 26, 2005, the United States Marshals Service (USMS) borrowed Ross from Commonwealth of Virginia authorities via a Writ of Habeas Corpus Ad Prosequendum to appear in federal court to address the federal charges. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelley Affidavit at ¶8]. On April 28, 2005, the Commonwealth of Virginia dismissed the charges involved in State Arrest #1. [Kelley Affidavit at ¶9]. On November 21, 2005, Ross was sentenced by the United States District Court for the Western District of Virginia to 60-months imprisonment for Conspiracy to Distribute Five Grams or More of Cocaine base. [Kelley Affidavit at ¶10] & [Exhibit #1]. Ross was returned to State custody on November 29, 2005. [Respondent's Exhibit #3 at ¶11].

On April 20, 2006, Ross pled guilty to the charges related to State Arrest #2 and was sentenced by the Circuit Court of the City of Bristol to 6 years imprisonment and a $500 fine for two counts of Possession of Marijuana with Intent to Distribute. [*See* Petitioner's Petition [1] at

Appendix 7 *and* Kelley Affidavit at ¶12 *and* Respondent's Exhibit #4, Circuit Court Judgment]. All but 60-days of this sentence were suspended, and the Court ordered the sentence was to run concurrent with any state or federal sentence. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelley Affidavit at ¶12 *and* Respondent's Exhibit #4, Circuit Court Judgment].

On June 2, 2006, Ross pled guilty to the charges related to State Arrest #3 and was sentenced by the Circuit Court of the City of Bristol to 30 years imprisonment and a $1000 fine for Possession of Cocaine with Intent to Distribute and Distribution of Cocaine. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelly Affidavit at ¶13 *and* Exhibit #5,Circuit Court Judgment]. All but 1 year and 11 months of this sentence was suspended, and the Court ordered the sentence to run concurrently with sentences imposed in any other jurisdiction. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelly Affidavit at ¶13] *and* Exhibit #5,Circuit Court Judgment].                      On October 20, 2006, Ross completed serving his Commonwealth of Virginia sentences and was turned over to federal authorities for service of his federal sentence. [*See* Petitioner's Petition [1] at Appendix 7 *and* Kelly Affidavit at ¶14]. According to the Affidavit of Forest Kelly, a Correspondent Specialist at the Designations and Sentence computation Center of the BOP, Petitioner's federal sentence has been computed as commencing on October 20, 2006; Petitioner has received 2 days prior custody credit (jail credit), and he is eligible to earn 235 days Good Conduct Time. [Kelly Affidavit at ¶15 *and* Respondent's Exhibit #2]. This results in Ross having a projected release date of February 24, 2011, from his federal sentence. [Kelly Affidavit at ¶15 *and* Respondent's Exhibit #2].

When computing Petitioner's federal sentence, two separate decisions were made by the BOP: when the federal sentence commenced, and to what extend he could receive credit for time spent in custody prior to commencement of his federal sentence. [Kelly Affidavit at ¶3]. Petitioner's federal sentence commenced on October 20, 2006, which is the date he was received into primary federal custody after he served his Virginia sentences. [*Id.*, ¶17]. The only time Petitioner was in federal custody after his several state arrests was during the time periods he

Page 4 of 13

was borrowed from Virginia via the Writ of Habeas Corpus Ad Prosequendum. [*Id.*]. After Petitioner's first arrest by Virginia authorities on September 15, 2004, Petitioner was in the primary custody of the State of Virginia; Petitioner continued in the custody of Virginia until he finished serving his Virginia sentences and custody passed from Virginia to the federal government on October 20, 2006. [*Id.*].

Petitioner received two days prior custody credit toward his federal sentence–for the time period of September 15, 2004, through September 16, 2004, related to State Arrest #1, which were related to and resulted in the federal charges. [Kelly Affidavit at ¶¶ 17, 21 *and* Respondent's Exhibit #2]. These charges were subsequently dismissed by Virginia, and Ross had not received credit for these two days toward any other sentence. [*Id.*]. Ross received credit for the time periods from January 29, 2005, through February 14, 2005 (related to State Arrest #2), and from February 28, 2005, through October 20, 2006 (related to State Arrest #3), toward his state sentences. [*Id.*, ¶23-24]. The time period from April 20, 2006, through October 20, 2006, is not eligible prior custody credit under because this was time Ross actually spent serving the sentences imposed by the state on April 20, 2006, and June 2, 2006. [*Id.*, ¶26].

### C.  Legal Analysis

The execution of sentences and the computation of jail time is an administrative function under the authority of the Attorney General, who has delegated this task to the BOP, including the responsibility for computing time credits and determining a sentence termination date once the defendant actually commences serving his sentence. *United States v. Wilson*, 503 U.S. 329, 335 (1992). Petitioner was sentenced in accordance with the Prison Litigation Reform Act of 1995(PLRA), Public Law 104-134, which applies to sentences for offenses committed on or after April 26, 1996. Under the PLRA, the statutory provision that pertains to "commencement of sentence" is 18 U.S.C. § 3585(a),[2] which provides as follows:

---

[2]

> Commencement of sentence - A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

The statutory provision that pertains to "credit for prior custody" is 18 U.S.C. § 3585(b), which states:

> Credit for prior custody - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences– (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence**. (Emphasis added).

In any computation of a federal sentence, two separate decisions must be made: "first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody." *Chambers v. Holland*, 920 F.Supp. 618, 621 (M.D.Pa. 1996).

### D.  Petitioner's Federal Sentence Commenced on October 20, 2006

A federal sentence does not commence until the Attorney General receives the defendant into custody for service of the federal sentence. *Chambers*, 920 F.Supp. at 621-22; *Pinaud v. James*, 851 F.2d 27, 30 (2nd Cir. 1988); *United States v. Pungitore*, 910 F.2d 1084,1118-19 (3rd Cir. 1990) ("a federal sentence does not begin to run until the defendant is delivered to the place where the sentence is to be served"); see also *Miller v. United States*, 826 F.Supp. 636, 638 (N.D.N.Y. 1993).  It is well-settled that a defendant may be prosecuted and sentenced by both federal and state governments if the defendant's criminal conduct violates the laws of each sovereign.  *United States v. Wheeler*, 435 U.S. 313, 316-17& n. 7 (1978).  Where an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns.  *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about the Attorney General's decision.  *See Poland*

*v. Stewart*, 117 F.3d 1094, 1098 (9th Cir.1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners.  If [the Attorney General] chooses to leave [an individual] in the custody of [the state]..., neither [the individual] nor this court is in a position to say [the Attorney General] lacks the authority under the Constitution to do so."); *see also Bowman v. Wilson*, 672 F.2d 1145, 1154 (3rd Cir. 1982) (" [t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.).

Petitioner was in primary state custody from September 15, 2004, through September 16, 2004 (State Arrest #1), and was then released on bond. [Kelly Affidavit at ¶17].  Petitioner again was in primary state custody on January 29, 2005, through February 14, 2005 (State Arrest #2), and was then again released on bond.  [*Id.*].  On February 28, 2005, Ross once again was taken in to primary state custody (State Arrest #3) where he remained until completion of his state sentences.  [*Id.*]  Under § 3585(a), Petitioner remained in primary state custody until October 20, 2006, when he was released from his state sentences and turned over to the exclusive custody of the Attorney General.

The time periods when Petitioner was borrowed from Virginia via a federal Writ of Habeas Corpus Ad Prosequendum did not begin the service of his federal sentence.  Under such a Writ, "the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998); *see also Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir. 1992) ("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ ad prosequendum; he is merely 'on loan' to federal authorities."); *Thomas v. Brewer*, 923 F.2d 1361, 1366-67 (9th Cir.1991) (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody).  This rule derives from the fact that the federal writ of habeas corpus ad prosequendum simply loans

the prisoner to federal authorities. *See Whalen*, 962 F.2d at 361 n. 3; *Crawford v. Jackson*, 589 F.2d 693, 695(D.C.Cir. 1978) ("When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum, he is considered to be 'on loan' to the federal authorities so that a sending state's jurisdiction over the accused continues uninterruptedly, and failure to release prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner.") Principles of comity require that when the writ of habeas corpus ad prosequendum is satisfied, the receiving sovereign return the prisoner to the sending sovereign. *Evans*, 159F.3d at 912.

Furthermore, under Section 3585(a), a federal sentence cannot commence prior to the date the sentence is imposed. *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2nd Cir. 1998). Thus, the earliest date Ross' federal sentence could possibly commence was November 21, 2005. [Kelly Affidavit at ¶18]. However, at the time Mr. Ross' federal sentence was imposed, he was in the primary custody of Virginia awaiting sentencing on state charges, and the federal Court was silent as to how the federal sentence was to run with any other sentence, whether state or federal. [*Id.*]. When this situation arises, the BOP ordinarily defers to the language in 18 U.S.C. § 3584(a). [*Id.*]. However, because the Virginia sentences had not yet been imposed when the federal sentence was imposed, deference to 18 U.S.C. § 3584(a) is impracticable. [Id.]. The Fourth Circuit has ruled on this precise issue by stating:

> The plain language of this statute does not grant a district court authority to order that its sentence run consecutively to a future sentence. Rather, the statute gives a court power to determine whether a sentence will "run concurrently or consecutively"only when a defendant is (1) sentenced to "multiple terms of imprisonment...at the same time," or (2) "already subject to an undischarged term of imprisonment.

*United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006). However, when a federal sentencing court has not or was not able to indicate how the federal sentence is to run with a not yet imposed sentence, Congress has given the BOP the discretion to grant a *nunc pro tunc* designation which allows the federal sentence to commence on the date it was imposed by making the state or local facility the place where the federal sentence will be served. *See United*

*States v. Evans*, 159 F.3d 908, 911-12 (4th Cir. 1998) (a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence."); *see also* [Kelly Affidavit at ¶19]. In making the decision to grant or deny a *nunc pro tunc* designation, the BOP reviews the factors set forth in 18 U.S.C. § 3621(b). [Kelly Affidavit at ¶20].

The BOP does not make a determination as to whether a federal sentence will run consecutive or concurrent to a state sentence based upon the intentions of a state court in imposing a state sentence. [*Id*., ¶18]. A determination as to the concurrent nature of the sentence made by one sovereign does not bind the other, as it is a well established principle that a state court cannot unilaterally impose a concurrent sentence between a federal and state court. *Bloomgren v. Belaski*, 948 F.2d 688, 691 (10th Cir. 1991); *Meagher v. Clark*, 943 F.2d 1277, 1282 (11th Cir. 1991); *Goode v. McCune*, 543 F.2d 751, 753 (10th Cir. 1976). A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, "compel the federal government to grant a concurrent sentence." *Pinaud v. James*, 851 F.2d 27, 30 (2nd Cir. 1988); *United States v. Smith*, 972 F.2d 243 (8th Cir. 1992); *see also Del Guzzi v. United States*, 980 F.2d 1269, 1270 (9th Cir. 1992)( state judge ordering sentence concurrent with federal sentence and recommending immediate transport to federal authorities has no power to compel federal government to grant concurrent sentence or credit time served in state prison). The doctrine of dual sovereigns supports the conclusion that a federal court cannot be forced to accept a concurrent sentence imposed by a state court. *Bloomgren*, 948 F.2d at 691; *Meagher*, 943 F.2d at 1282; *Goode*, 543 F.2d at753. The federal system under the dual sovereignty doctrine has full power to set punishment for crimes against the federal sovereign. So long as consistent with the federal Constitution, federal statutory and regulatory power to punish for federal crime is not constrained at all by state power. If a state court were allowed to force a federal court to run its federal sentence concurrent to a state sentence, the state would

clearly be encroaching on the federal court's right to "exact payment independently of" the state. *Taylor v. Sawyer*, 284 F.3d 1143, 1151 (9th Cir. 2002).

The BOP made such a review in Mr. Ross' case, under § 3621(b), and determined a *nunc pro tunc* designation was not appropriate. [See Attachment 5a to Petitioner's Petition [1]] It appears to the Court that Petitioner's federal sentence properly commenced on the date he was received into exclusive federal custody, October 20, 2006, and he is not entitled by law to have his federal sentence computed as running concurrently with his state sentences by way of a *nunc pro tunc* designation.

### E.  Prior Custody Credits

Pursuant to 18 U.S.C. § 3585(b), Petitioner has received credit on his federal sentence for September 15, 2004, and September 16, 2004. [Kelly Affidavit at ¶ 22 *and* Respondent's Exhibit #2].  These two days concerned Petitioner's arrest by the Bristol Police Department (State Arrest #1) that were related to and resulted in the federal charges. [Kelly Affidavit at ¶ 22].  These charges were subsequently dismissed by Virginia, and Petitioner had not received credit for these two days toward any other sentence. [*Id.*].  Petitioner did receive credit for the time periods of January 29, 2005, through February 14, 2005, and February 28, 2005, through October 20, 2006, toward his state sentences.  [*Id*., ¶23-24].  The time period from April 20, 2006, through October 20, 2006, is not eligible prior custody credit under Section 3585(b) because this was time Petitioner actually spent serving the sentences imposed by the state on April 20, 2006, and June 2, 2006.  [*Id.*, ¶26].

Contrary to Petitioner's claim, he is not entitled to have the periods of time credited toward his federal sentence that were previously credited by the Virginia Department of Corrections toward his state sentences.  This would result in Mr. Ross receiving credit twice, and Federal law prohibits the award of "doubt credit."  *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000) (Section 3585(b) "forbids the BOP from giving credit for presentence custody when that credit has been applied against another sentence") (citation omitted); *see also Chambers v.*

*Holland*, 920F.Supp. 618, 623 (M.D.Pa. 1996) ("Section 3585 [of Title 18 of the United States Code] does not permit credit on a federal sentence for time served and credited against another sentence."), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *United States v. Labeille-Soto*, 163 F.3d 93,99 (2d Cir. 1998) (same); *United States v. Kramer*, 12 F.3d 130, 132 (8th Cir. 1993) (holding that the BOP "properly decided not to award [the petitioner] credit for the time served, as it would have contravened the proscription in 18 U.S.C. § 3585(b) (1988) against double crediting"; court explained that "[t]he record shows that [the petitioner] received credit toward his state sentence for that same time period"); *United States v. Dennis*, 926 F.2d 768,769 (8th Cir. 1991) (same).

Petitioner is also not entitled to be credited for the period of time the USMS borrowed him from the Commonwealth of Virginia under a Writ of Habeas Corpus Ad Prosequendum. A federal sentence does not begin to run when a federal defendant is produced for prosecution by a Writ of Habeas Corpus Ad Prosequendum from state custody. *Stewart v. Bailey*, 7 F.3d 384, 389 (4th Cir. 1993)(a prisoner is not even "in custody" when he appears in another jurisdiction's court pursuant to an ad prosequendum writ; he is merely "on loan" to that jurisdiction's authorities); *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991); *Hernandez v. United States Attorney General*, 689 F.2d 915, 919 (10th Cir. 1982); *United States v. Smith*, 812 F.Supp. 368, 370 (E.D.N.Y. 1993). A prisoner is not entitled to prior custody credit for time spent in federal detention pursuant to a writ of habeas corpus ad prosequendum, when the time period was credited against his state sentence, because he already had been sentenced on the state offense and was serving that sentence during the relevant time period. *Rios v. Wiley*, 201 F.3d 257, 272 (3rd Cir. 2000); *United States v. Dennis*, 926 F.2d 768, 770 (8th Cir. 1991); *Jimenez v. Warden, FDIC, Fort Devens, Massachusetts*, 147F.Supp.2d 24, 28 (D.Mass. 2001).

Petitioner relies on the decisions in *Brown v. United States*, 489 F.2d 1036 (8th Cir. 1974); *United States v. Haney*, 711 F.2d113 (8th Cir. 1983);*and Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993), to argue that he is entitled to additional jail credit. However, Petitioner's reliance on these decisions demonstrates his failure to apprehend that the holdings in *Brown* and

*Haney* are based on the language of 18 U.S.C. § 3568, a statute which does not apply to Petitioner and which does not contain 18 U.S.C. § 3585(b)'s explicit prohibition against double credit. Thus, it is 18 U.S.C. § 3585(b), not *Brown* and *Haney*, that governs this case. As discussed above, Virginia gave Petitioner credit for the time he spent in state custody from January 29, 2005, through October 20, 2006, which was the date he was released into federal custody. Having already received credit from Virginia, Petitioner is not entitled to again receive credit on his federal sentence.

Furthermore, Petitioner's reliance on *Kayfez*, is misplaced because the unique circumstances in that case (a concurrent state sentence, which was vacated and then reimposed) are not present in his case. As discussed above, even though the state court ordered its sentences to run concurrent with the federal sentence, the BOP does not make these types of determination based on the state court's intent. Rather, the BOP makes these determinations using the plain language of 18 U.S.C. § 3621(b), and in Mr. Ross' case the BOP determined a *nunc pro tunc* designation was not appropriate. Thus, *Kayfez* does not apply because there is no recognized concurrent sentence.

## RECOMMENDATION

Based upon the reasons set forth above, it is recommended that the Petitioner's Petition [1] should be denied and dismissed, and that the Respondent's motion to dismiss or in the alternative for summary judgment **[11] should be granted.**

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

May 20, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).